The case made by the bill was that Stephen L. Ferrand, the intestate of the plaintiff, at the request of the defendant Tarrance, endorsed a note of the said Tarrance for $5,000, for the purpose of guaranteeing to Irwin Co. certain acceptances made, or to be made, by them on account of said Tarrance, and that a certain William E. Poe endorsed another note of said Tarrance for the same sum and executed for the same purpose; that Irwin Co. sent these notes to this State and had suits instituted thereon for the purpose of recovering the amount of their advances, intended to be secured thereby; that the whole amount of all their advances was $3,940.09; that judgments were rendered as well in the suit against Poe as in that against the plaintiff, for the entire amount of each note respectively, but with an agreement not to collect more than the sum due for their advances; that this agreement was testified in the suit with the present plaintiff by a document subscribed by the attorney of record of the plaintiffs in that suit, and filed among the records of the court, whereby it was declared that the note (on which judgment had been so obtained) with another note had been deposited (14) with them (the said plaintiffs) as a guaranty for sundry acceptances, as per account filed; that they claimed only the sum of $3,940; that they would not sue out execution for more than that sum and the interest to become due thereon, and the costs; that Hutton and Horton pretended that they had some claim for the balance of these notes, and that how this might be was to be settled between them and the defendants (meaning the defendants against whom judgments had been rendered); that the plaintiffs, wishing to keep aloof from this controversy, would lend no aid to either party therein; that if the defense against the *Page 18 
claim of Hutton and Horton was improper at law, and not in equity, the judgment should not prejudice such defense, and if necessary, upon payment of so much thereof as should be due the plaintiffs, a new trial should be granted, the plaintiffs in no event to be liable for the costs of litigation. The bill then charged that Irwin Co. had been fully paid off (the one-half by the plaintiff and the other half by Poe) all they claimed as due for interest and cost, but nevertheless an execution had been sued out to collect the residue of the judgment from the plaintiff, with an endorsement on the said execution that it was issued for the use of Hutton and Horton.
The defendants Hutton and Horton by their answer denied that the note endorsed by the plaintiff's intestate was so endorsed for the purpose of guaranteeing advances made or to be made to Tarrance by Irwin Co., but averred that Tarrance had purchased the interest of these defendants in the late firm of Hutton, Horton Co., and upon such purchase bound himself to pay them the sum of $3,000, and to pay off all the debts of the said late firm, and to save them from liability or injury therefor; but it was further stipulated upon the contract of purchase that for the purpose of more speedily accomplishing the payment of the debts of said firm, and relieving these defendants from responsibility thereupon, Tarrance should put into their hands four notes amounting together to the sum of $15,000, with sufficient endorsers, to be by these defendants negotiated or collected for the purpose of discharging those debts, and also of paying them the $3,000 due for the said (15) purchase; that the two notes mentioned in the bill, with two others, one for $3,000 endorsed by William McKay, and one for $2,000 endorsed by William E. Poe, were delivered to the defendants in pursuance of said agreement; that all of said notes were transferred by them to Irwin Co. in order to guarantee to them such advances as they might make at the request of these defendants; that advances as they might to Irwin Co. to the amount of $9,000, all of which were faithfully applied by the defendants to the discharge of the debts of the late firm of Hutton, Horton Co.; that the notes of $3,000 and $2,000 were paid up in full to Irwin Co., which left a balance due them of between $3,000 and $4,000, to collect which balance suits were brought by Irwin Co. against the plaintiff as administrator of Ferrand, the endorser of one note, and William E. Poe, the endorser on the other unpaid note; and judgments were recovered respectively in said suits for the full amount, principal and interest, of each note. The answer then averred that before the commencement of said suits these defendants had taken up and paid off with their own funds debts of Hutton, Horton Co. which Tarrance was bound to have discharged, and which were intended to be secured by the said notes, to the amount of $1,843.50, which with the interest thereon *Page 19 
they were justly entitled to collect out of the said endorsers. These defendants admitted that Irwin Co. had collected from the plaintiff and William E. Poe the entire balance due them for their advances, but insisted that the sum aforesaid so due them, and for which the said notes were and the judgments thereon are securities, remained wholly unpaid. They denied that the agreement of Irwin Co. set forth in the bill was intended to discharge the plaintiff from liability to these defendants on account of the judgment, but was a mere memorandum to show "that the said Thomas Irwin Co. only claimed in their own right by virtue of said judgments the amount for which they severally sued out their executions, it being for about $2,000 against the plaintiff as administrator of T. L. Ferrand, whereas by the agreement referred to, according to the plaintiff's own showing they were authorized to collect the rise of $3,000." Defendants averred that after Irwin (16) Co. had collected what was due them they, in pursuance of the agreement upon which the notes had been transferred, assigned over the said judgments to these defendants for the benefit of the creditors of the late firm of Hutton, Horton Co., a copy of which assignment was annexed to their answer. They further insisted that if the "memorandum" before referred to could have any operation against their claim, that the plaintiff had full notice of that claim, and abundant time to make defense against it, and having altogether neglected to make any defense, his application for an injunction should be regarded as a mere effort to delay the payment of a just debt.
Irwin Co. by their answer also denied that the notes in question were received by them from Tarrance, but declared that the same were placed with them by Hutton and Horton as a guarantee for the payment of moneys advanced by these defendants to Hutton and Horton for the benefit of the late firm of Hutton, Horton 
Co., and upon an agreement to be returned as soon as the amount of said moneys should be collected or refunded. They stated the amount of their advances, and of their collections, and the balance due them, and their sending on the two unpaid notes to be put in suit, and the judgments obtained thereon, as was set forth in the answer of their codefendants; admitted the making of the agreement by their attorney on getting judgments as charged in the bill, and their having obtained full satisfaction for all their advances; insisted that they had a right to assign the judgments to Hutton and Horton, declared that they have done so, and contended that the true meaning of the memorandum or agreement was that the plaintiff should have a reasonable time to make good his defense to any other claim that might arise on the judgment against him, and this he had been allowed most amply. These defendants denied that they have collected out of the plaintiff the full amount for which they had a right to sue out *Page 20 
execution against him, as by the terms of the agreement they were to be allowed to sue out execution for $3,940 and upwards, and they have collected from the plaintiff only the sum of $2,000.
(17) As to Ferrand, the bill was taken pro confesso. On the last circuit Bailey, J., dissolved the injunction and the plaintiff prayed an appeal, which was allowed.
The last ground of defense taken in this answer, which has been also, but not so distinctly, urged in the answer of Hutton and Horton, may be promptly disposed of. The agreement that gives rise to the present controversy was avowedly made in relation to both the judgments. According to that agreement the plaintiffs in the judgments were to be at liberty to sue forth an execution upon either of them for the whole of the sum ascertained to be due, but they were not to collect from both of them more than the sum truly due. The resort to a defense so disingenuous is calculated to hurt the cause that adopts it; but we will consider the main defense relied upon, altogether unprejudiced thereby.
The real dispute in this case is between the estate of the deceased, Stephen L. Ferrand, represented by the plaintiff, on the one hand, and the defendants Hutton and Horton, on the other. Irwin Co. set up no claim to the money in dispute, and Tarrance is insolvent. And the dispute is not what shall be finally decreed between these parties upon the hearing, but what is the proper disposition of the subject until a hearing of the cause can be had. The decision of this question depends upon the proper construction of the agreement so often referred to, and the established usages of courts of equity.
There is no pretense that the highly respectable professional gentleman (Mr. Henry) who subscribed that agreement either transcended his authority or acted without the full approbation of his constituents. Hutton and Horton do not complain that this agreement was made in violation, or in fraud of their rights, unless it should be construed to have intended a release of their demands. They were on the spot where the suits were prosecuted, and the suits were instituted, as they say, at their request. It can scarcely be doubted but that they were privy to the agreement and assented thereto. But however this may be, it was known to the attorney of the plaintiffs in the suits when the agreement was entered into that they set up some claim under or (18) upon the notes which was not admitted by the endorsers, and it *Page 21 
was his purpose — that of those whom he represented and of the defendants in the suits — that in the rendition of the judgments this claim should not be passed upon. Nothing in regard to its validity or invalidity was to be determined thereby. Unquestionably the defendants Hutton and Horton are right in insisting that by the agreement it was not intended to release, surrender, or discharge their claim. The judgments were severally taken for the full amount of principal and interest of each note, not only to secure the payment to the plaintiffs of the part thereof which by the agreement was shown to be due to them, but to stand also as securities for any other person who had claims founded on the notes. It is contended by the defendants Hutton and Horton that they are entitled to have the benefit of these securities because of advances made upon the faith of these notes to the amount of $1,843.50, and if this allegation of theirs be established they will have a right, in the name of Irwin Co., to collect that amount upon these judgments. They would have had this right without an assignment, and as that transfers no legal interest, they have this right and no more under the assignment. Irwin Co., are still the legal proprietors of these judgments, and this Court will hold them to be trustees thereof for those beneficially entitled to the uncollected moneys thereon. But certainly upon a fair construction of the agreement it must first be established that the claim of Hutton and Horton is well founded before they are entitled to any control over the judgments. When these were rendered the claim was characterized as a pretension which, whether true or false, was wholly unknown to those in whose favor the judgments were rendered, and upon the truth or falsehood of which they were not to determine. From the controversy in regard to this claim they were to keep aloof, and in its prosecution they were to be wholly neutral. The claim was to be settled between the parties averring and contesting it — amicably if they could, by a resort to the courts of justice if they could not. To arm one of these parties with the power of collecting all that is demanded from the other, before any settlement of the controversy — to give him this decided advantage in the beginning of the judicial contest — would be to observe a singular sort of neutrality. While the agreement stands this cannot be permitted.
The defendants in this case seek to put an absurd construction (19) upon the agreement when they insist that the endorsers were to have time by it to disprove the claim. It is according to the ordinary notions of justice that a disputed claim should be proved. Until it is prima facie established, defense against it is not to be asked. Where, how, and before whom is the claim to be disproved? The agreement shows that unless the parties came to an amicable arrangement the claim *Page 22 
was to be proved, and if the judgments produced difficulties in opposing it, the judgments themselves should be set aside and new trials allowed, so as to leave the controversy one entirely new.
The usages of the court are consistent with the course which the agreement indicates as proper to observe. The equity of the bill in substance is that the note in this case was received by the plaintiffs at law only as a security for their advances, and these have been paid. This equity is not denied. The plaintiffs at law admit that they have no right to the money sought to be collected. But a new claim is introduced in behalf of persons not parties to the judgment, who pray to have the benefit of it to secure a demand which has never yet been passed upon by any tribunal. It may be that this claim is just, and therefore it is right that an opportunity should be afforded to show it. But non constat that it is just. The oath of the defendants shows no more than that they so believe, and it is not an oath responsive to or denying any of the allegations in the bill. It is the settled rule that when the equity of a bill is not denied by the answer, but a new equity is thereby introduced to repel or avoid it, the injunction will not be dissolved by such an answer, but shall be continued until the hearing of the cause.
It is the opinion of this Court that the interlocutory order dissolving the injunction in this cause was erroneous, and that the said injunction ought to have been continued until the final hearing of the cause. (20) A certificate to this effect must be forwarded to the court of equity for the county of Rowan, with instructions to proceed accordingly.
PER CURIAM. Reversed.
Cited: Miller v. Washburn, 38 N.C. 165; Lyerly v. Wheeler, ibid., 173.